RICHARD M. CORP, Appellant, v LEE ALEXANDER, as Mayor of the City of Syracuse, et al., Respondents.

Fourth Department, April 1, 1983

APPEARANCES OF COUNSEL

*Louis J. Goode* for appellant.

*David M. Garber, Corporation Counsel (James L. Gelormini* of counsel), for respondents.

**OPINION OF THE COURT**

SCHNEPP, J.

Plaintiff, a Deputy Chief of the Syracuse City Fire Department, claims that from 1977 through 1980 he was not paid for the hours of service that he performed in excess of

the maximum number of hours permitted by section 2 of chapter 1011 of the Laws of 1968, as amended by section 1 of chapter 952 of the Laws of 1970, and seeks judgment, *inter alia,* declaring that defendants violated his statutory rights and that he is entitled to overtime pay or equivalent compensatory time off, and an award of money damages. The statute provides that no "fireman shall be required to work more than an average of forty hours per week, computed during the current fiscal year" and defines "fireman" as a "uniformed member of a fire department". The parties have stipulated that the statutory maximum number of hours per year that a fireman may be required to work is 1,960. The statute further provides that if a fireman is required to work more than 40 hours in any week because "of a conflagration, riot or other emergency", he must be given compensatory time off.

It is not disputed that plaintiff, as a deputy chief, works a traditional 40-hour week and is not covered under a union agreement. He is the health and safety officer for the department and primarily performs administrative duties. He inspects equipment, investigates injuries, gives lectures and works on budgetary matters. He is also assigned on a rotational basis to Fire Control Center duty which requires him to report to the control center in the event of a major disaster or unusually large fire, something which only occurs two or three times a year.

In addition, he is scheduled as "duty chief" for certain weekday nights and weekends in rotation with six other deputy chiefs. As duty chief working the night shift, he is "on call" for a 16-hour period after completion of his normal workday. He must visit at least two fire stations, maintain contact with the fire department via a two-way radio, supervise men and resources at all fires above a certain level of severity and perform other minor tasks. He is otherwise free to be at home and spend his time where and how he sees fit. His duties are the same on the weekend when he is scheduled as duty chief, except he visits several fire stations both morning and evening and is required to meet with other chiefs at 9:30 A.M. When he is scheduled as duty chief, he is given time off, or credited with having earned time off, at the rate of one regular

eight-hour workday for every weeknight and two such days for each two-day weekend.

In an intermediate order which became the law of the case, plaintiff was granted "partial summary judgment declaring that [he] is a 'fireman'" within the meaning of the statute. This order which was binding on the Trial Judge was not appealed when it was entered but, since it necessarily affects the final judgment, it may be reviewed by this court (CPLR 5501, subd [a], par 1; see, also, *Matter of Aho,* 39 NY2d 241, 248).

At trial plaintiff submitted proof as to the number of days he worked as deputy chief and his on-call time as duty chief in each of the years in question. He contended that his on-call time as duty chief is fully compensable and that he was required to work in excess of the stipulated 1,960 maximum number of hours in each year. The trial court found that plaintiff failed to sustain his burden of proving that he was required to work in excess of the stipulated maximum, directed that judgment be entered in defendant's favor, and ruled that the compensatory time-off policy of the defendant city "met the requirement of the above statute in that the total number of hours worked by plaintiff did not exceed the annual maximum". Although we agree with the trial court that plaintiff was not required by defendants to work more than an average of 40 hours per week, we hold that the statute in question has no application to him.

The statute is derived from section 168-a of the Labor Law (as added by L 1957, ch 410, as amd by L 1958, ch 333, and L 1962, ch 992, and repealed by L 1968, ch 1011, § 1) which in identical language limited the maximum hours of "uniformed" firemen. In his Memorandum of Approval of section 168-a of the Labor Law, the Governor said:

"The fireman who is usually required to devote to his work more hours than most other employees also assumes risks greater than most others. He constantly subjects himself to danger in the interest of protecting lives and property of society. In so doing he is obliged to spend more time away from his family than do most of the other public employees or officials.

"There is an element of dedication which is linked to the adventuresome call of the fire-fighter's profession. Expression of public appreciation and recognition of this service is required if we are to attract capable and fearless men to do this work. One way of meeting the competition of private industry is by providing that the number of hours of service be established at the reasonable base which is set by this measure." (NY Legis Ann, 1957, pp 494-495.)

Thus, it appears that the Governor considered the law as applicable to firemen who are called on to work long hours away from home in a hazardous service as fire fighters, and as assuring a reasonable limitation on the number of hours that they may be required to work (see 1958 Opns Atty Gen 208). Likewise, the Third Department has said that section 2 of chapter 1011 of the Laws of 1968, as amended by chapter 952 of the Laws of 1970, was "enacted to bring the hours worked and benefits received by *firefighters* in line with other public employees" (emphasis added), and that: "To achieve this desired result it was necessary to make allowances for the unique working hours demanded of firefighters. Since the various municipalities required around the clock fire protection, the firefighters of necessity worked more than the traditional eight-hour shift and in many cases firefighters worked 24-hour shifts. Therefore, provisions were made in this series of statutes to accommodate the longer continuous hours of work by firefighters with the mandated maximum hours permitted. The instant statute restricted the maximum hours a firefighter was 'required to work' to no more than an average of 40 per week during the current fiscal year. Consequently, on an annual basis, if properly planned, it could be arranged so that at the end of the year no firefighter worked more than an average of 40 hours per week." (*Baldine v Gomulka*, 61 AD2d 419, 421, mot for lv to app dsmd 45 NY2d 818.)

From the foregoing it is clear that the statute was designed for uniformed fire fighters who were obliged to be on duty and, in many cases, required to work long, irregular hours. It was not meant to apply to officers of a fire department, such as plaintiff, whose duties are managerial and supervisory in nature and who normally work tradi-

tional eight-hour shifts (see 1980 Atty Gen [Inf Opns] 141). Although as a deputy chief, plaintiff's work is in furtherance of fire fighting, his principal efforts are not devoted to the actual fighting of fires. There is a vast difference in the nature of the duties and in the working hours between a deputy chief and a line fireman. Plaintiff may be a "uniformed" fireman in the sense that he has a uniform, but he is not a "uniformed" fireman in the sense that was intended by the Legislature in enacting the statute. We interpret this statute to give effect to that intention (see McKinney's Cons Laws of NY, Book 1, Statutes, § 92).

■ In any event, defendants did not violate the statute because they did not require plaintiff to work more than an average of 40 hours per week. As the trial court found, plaintiff's scheduled on-call time as duty chief is not, per se, time he is required to work under the statute. When he is not "actually working" while on call, plaintiff is allowed to follow purely personal pursuits, with only minimal restraint. He can stay at home, go shopping, mow his lawn or pursue any other personal interest. He is "engaged to wait" during the on-call period and it is only when he is actually working that he is "required to work" within the meaning of the statute (cf. *Skidmore v Swift & Co.*, 323 US 134). The trial court determined that plaintiff was not required to work more than the statutory maximum number of hours and the record fully supports this determination.

Furthermore, the statute does not generally provide for the relief which plaintiff seeks. The statute flatly limits the number of hours a fireman shall be required to work, makes no provision whatever for overtime pay and, except for a "conflagration, riot or other emergency", does not provide for compensatory time off.

Finally, it is observed that in deciding this case the trial court entered judgment in defendant's favor and did not fully declare the rights of the parties. Accordingly, the order and judgment appealed from should be modified to declare that plaintiff is not a "fireman" as defined by chapter 1011 of the Laws of 1968, as amended by chapter 952 of the Laws of 1970, and, in any event, that defendants did not violate the statute by requiring him to work more

than an average of 40 hours per week and that the statute makes no provision for overtime pay or, under the circumstances of this case, for compensatory time off.

DILLON, P. J., CALLAHAN, DOERR and BOOMER, JJ., concur.

Order and judgment unanimously modified, and as modified affirmed, without costs, in accordance with opinion by SCHNEPP, J.