OPINION OF THE COURT
Titone, J.
The primary issue presented on this appeal is whether a municipality may challenge a determination by a State administrative agency, and at the same time recover wrongfully withheld money from the State, within the context of an article 78 proceeding in Supreme Court, or whether such a lawsuit must be commenced in whole or in part in the Court *234 of Claims. We hold that where the thrust of the lawsuit is the review of an adverse State agency determination, with the monetary relief incidental, Supreme Court may entertain the entire case under CPLR article 78.
Petitioner, the New York City Human Resources Administration (HRA), provides public assistance benefits to some 860,000 New Yorkers under the Aid to Dependent Children (ADC) and Home Relief (HR) programs. Although the cost of these social services programs is initially borne by the City of New York (City), New York State reimburses the City for 50% of all ADC and HR benefits paid to eligible recipients, after deducting any applicable Federal funds received (see, Social Services Law § 153 [1] [d]). Eligibility under these programs is subject to continual review, modification and termination. Generally, however, before the Department of Social Services may terminate or reduce benefits paid under these programs, it must provide the recipient with notice of the proposed eligibility determination (see, 18 NYCRR 358.8, 358.9).
From 1981 to 1983, respondent, the New York State Department of Social Services (NYSDSS), audited the City for compliance with the regulations governing the timely termination or reduction of benefits to recipients for the five-year period 1976 to 1980 (see, Social Services Law §34 [5] [a]). Under 18 NYCRR 358.8 (d) (1) and 351.22 (e), if the local welfare agency receives readily verifiable proof that a recipient’s eligibility status has changed (such as a death certificate), no prior notice need be given to the recipient before taking action. In such cases, the HRA must "immediately initiate action” to terminate or reduce payments (see, 18 NYCRR 351.22 [e]). In all other cases, the HRA must provide the recipient with a minimum of 10 days’ notice that payments will be reduced or terminated (see, 18 NYCRR 358.8, 358.9).
In conducting its audit, however, the NYSDSS also utilized unpromulgated internal audit guidelines, which provided that in cases requiring no notice to the recipient, benefits were to be reduced or terminated within four days. In all other cases, while the statute required only that the recipient be given 10 days’ notice, the audit standard required that action be taken within 14 days. In effect, these audit standards imposed on the City the obligation to take appropriate action on a case within four days of the minimum required notice period. Using a statistical sampling of cases closed and grants reduced during the audit period, the State determined that the City failed to *235 meet the audit criteria in some 62% of all cases. As a result, the State withheld $20 million in reimbursements as an administrative penalty.
The City then commenced this article 78 proceeding in Supreme Court, contending that the State’s determination was arbitrary and capricious, since it was based solely on these unpromulgated auditing standards. The petition also alleged that the State wrongfully withheld $20 million in reimbursements based on this improper audit and sought to annul the administrative penalty. The State contended that Supreme Court lacked subject matter jurisdiction. Supreme Court rejected the State’s argument, found that the NYSDSS acted arbitrarily and capriciously, and granted the petition in its entirety. The Appellate Division modified by vacating so much of the judgment as awarded interest on the $20 million in reimbursements. We granted leave to appeal and now affirm.
On this appeal, the State characterizes the City’s claim as one for money damages and contends that redress must be sought in the Court of Claims. Alternatively, relying on CPLR 7806, the State takes the position that while an article 78 proceeding may be employed to review whether the audit was conducted in an arbitrary and capricious manner, in order for the City to recover the withheld reimbursements, it must commence a second lawsuit in the Court of Claims. Finally, on the merits, the State argues that its use of the internal audit standards was reasonable.
Under CPLR 7803 (3), Supreme Court has subject matter jurisdiction over a proceeding challenging an administrative agency determination on the ground that it "was arbitrary and capricious” (see also, CPLR 7804 [b]). However, "[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity” (CPLR 7806). On the other hand, where a party seeks only money damages against the State, the proper forum for such an action is the Court of Claims (NY Const, art VI, § 9; Court of Claims Act §§ 8, 9; see, Cass v State of New York, 58 NY2d 460, 463; Schaffer v Evans, 57 NY2d 992, affg 86 AD2d 708; see also, Morell v Balasubramanian, 70 NY2d 297, 300-302; Sinhogar v Parry, 53 NY2d 424, 431; Psaty v Duryea, 306 NY 413, 416-417).
*236 We cannot agree with the State that the City’s claim is essentially one for money damages. Whether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim, is dependent upon the facts and issues presented in a particular case (see, Pauk v Board of Trustees, 68 NY2d 702, 705; Schaffer v Evans, supra; Matter of Schwab v Bowen, 41 NY2d 907). Here, the threshold inquiry was whether the State acted arbitrarily and capriciously because its determination was premised solely on the City’s failure to comply with the NYSDSS’ internal audit criteria. Consequently, the City initially sought judicial review of a determination made by a State administrative agency, a customary type of article 78 proceeding over which the Supreme Court unquestionably has subject matter jurisdiction (see, Pauk v Board of Trustees, supra; Health Care Plan v Bahou, 61 NY2d 814; Solnick v Whalen, 49 NY2d 224, 230; cf., Automated Ticket Sys. v Quinn, 58 NY2d 949, affg 90 AD2d 738; Breen v Mortgage Commn., 285 NY 425). For this reason, the cases relied on by the State are not applicable, since they involve contract and tort actions seeking damages from the State, or eminent domain proceedings over which the Court of Claims clearly has jurisdiction (see, e.g., EDPL 304 [E]; Morell v Balasubramanian, supra; Sinhogar v Parry, supra; Psaty v Duryea, supra).
Only if it was found that the NYSDSS acted arbitrarily and capriciously could its determination, and the concomitant administrative penalty, be annulled. This accomplished, the City was then entitled to the withheld reimbursements under the Social Services Law. This is true whether or not the court directed payment, since upon nullification of the underlying administrative action, the State had a statutory duty to reimburse the City. Consequently, in ordering payment to the City, the court merely directed the State to fulfill its statutory duty (see, Social Services Law § 153 [1]; Matter of Economic Opportunity Commn. v Shaffer, 114 AD2d 628, 630). Had the City only petitioned for judicial review of the audit procedures employed and annulment of the penalty, without additionally requesting the court to direct payment, the State would still have been obligated to reimburse the City. Thus, the demand for monetary relief was unquestionably incidental to the facts and issues presented. The primary focus of this proceeding was a determination of the reasonableness of NYSDSS’ audit.
CPLR 7806 also requires that the restitution or damages awarded "must be such as [petitioner] might otherwise recover *237 on the same set of facts in a separate action or proceeding suable in the supreme court”. The construction of the provision has generated some confusion. One commentator has suggested a similar interpretation to that advanced by the State, stating: "It may indeed be that the adoption of this measure has effectively precluded damages as an Article 78 incident whenever state action is complained of, and hence state money is sought, remitting the petitioner to a plenary Court of Claims suit for the money whatever the 'primary’ relief he has been able to get from Article 78. If that is so, incidental damages in Article 78 would be permissible only against municipal and like respondents, since they would be subject to plenary suit in the Supreme Court.” (Siegel, NY Prac § 570, at 801.) Under this construction, the City would be required to commence a second lawsuit in the Court of Claims in order to recover the reimbursements.
The statutory language, however, does not mandate such a restrictive reading of CPLR 7806, and in enacting the statute, the Legislature never intended such an extreme result (see generally, Bill Jacket, L 1962, ch 318). Incidental monetary relief has long been permitted in article 78 proceedings commenced in Supreme Court in a variety of administrative contexts (see, e.g., Matter of Gunn v Blum, 48 NY2d 58; Matter of Pearlstein v Axelrod, 103 AD2d 921; State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs., 90 AD2d 51). Moreover, the legislative history of CPLR 7806 indicates that it was intended to effectuate only a minor change in the law. The statute was adopted for the sole purpose of immunizing the State from paying consequential damages in cases where a State agency improperly denied, revoked or suspended a petitioner’s license (Bill Jacket, L 1962, ch 318, Sponsor’s Mem to Governor’s counsel; Mem of Judicial Conference). There is absolutely no indication that the Legislature intended to otherwise limit the power of the Supreme Court to award incidental monetary damages in an article 78 proceeding. Requiring future petitioners seeking incidental monetary relief to commence a separate action in the Court of Claims after prevailing in an article 78 in Supreme Court would work a profound procedural change in the manner in which our judiciary reviews administrative determinations. Adopting the State’s argument would unnecessarily add to the cost of litigation and impose an undue burden on the litigant, as well as the courts. A jurisdictional realignment of this magnitude is best left to the Legislature.
*238 Finally, we cannot agree with the State that its audit was conducted under reasonable standards. Social Services Law § 20 (3) (e) empowers the State to withhold reimbursements only if the City fails "to comply with law, rules or regulations of the [NYSDSS] relating to public assistance and care or the administration thereof’. We conclude that the City was in compliance with all applicable statutes and regulations. The administrative penalty was assessed solely because the City failed to comply with unpromulgated, internal audit standards. Inasmuch as the City had no legal duty to comply with the rigid requirements these audit standards imposed, it cannot be said that the Appellate Division erred in finding that the State acted arbitrarily and capriciously.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.