OPINION OF THE COURT
Martin Schneier, J.
The primary issue presented here is whether a former public assistance benefits recipient of $10,736 who had participated in New York’s “Work Experience Program” and now is a $10,000 New York State lottery prize winner is deprived of the New York State and federal minimum wage standards by the implementation of Social Services Law § 131-r which required reimbursement to New York of $5,000. Thus, the lottery winner receives only the remaining $5,000 of his original $10,000 prize.
This is an issue of first impression in New York State.
In this CPLR article 78 proceeding respondents cross-move to deny the petition and to dismiss this proceeding.
Background
On August 10, 2007, petitioner Walter E. Carver won a $10,000 prize from the New York State Lottery after purchasing a lottery ticket in Brooklyn, New York. Previously, from September 5, 1997 through March 4, 2000, petitioner had received public assistance benefits in the total sum of $10,736. As a condition of receiving public assistance benefits petitioner was required to participate in the “Work Experience Program” (WEP) pursuant to Social Services Law § 336.
Social Services Law § 336 states, in pertinent part:
“1. Social services districts may provide, and require applicants for and recipients of public assistance to participate in a variety of activities, including but not limited to the following:
“(a) unsubsidized employment;
“(b) subsidized private sector employment;
“(c) subsidized public sector employment;
“(d) work experience in the public sector or nonprofit sector . . . ;
“(e) [o]n-the-job-training.”
Social Services Law § 131-r (1) states, in pertinent part:
“Any person who is receiving or has received, within *604 the previous 10 years, public assistance pursuant to the provisions of this article, and who wins a lottery prize of six hundred dollars or more shall reimburse the department from the winnings, for all such public assistance benefits paid to such person during the previous ten years; provided, however, that such crediting to the department shall in no event exceed fifty percent of the amount of the lottery prize.”
To facilitate the recovery from the lottery prize winnings payable to persons who received public assistance benefits within the past 10 years the New York State Office of Temporary and Disability Assistance coordinates with the New York State Division of the Lottery to intercept the prizes won by persons known to have received public assistance benefits within the past 10 years.
By letter dated September 10, 2007, petitioner was informed by respondent, New York State Office of Temporary and Disability Assistance (OTDA), that pursuant to Social Services Law § 131-r, one half ($5,000) of his lottery prize winnings was being credited toward the public assistance benefits that he had received previously. Petitioner, on September 27, 2007, requested a review of this determination.
On January 8, 2008 petitioner was notified of the final determination by OTDA to retain $5,000 of his lottery prize winnings. On May 13, 2008 petitioner commenced this article 78 proceeding challenging respondents’ September 10, 2007 determination to intercept and retain one half of petitioner’s lottery prize winnings and the January 8, 2008 final decision denying petitioner’s administrative appeal.
The fourth cause of action in the petition alleges, in pertinent part:
“Violation of Federal Labor Law 29 USC Section 206
“44. . . . the federal minimum wage law is codified by 29 USCS Section 206 and applies to Respondents. . . .
“46. Respondents’ retroactive taking of wages which were earned by Petitioner would result in Petitioner having worked for wages far below the minimum wage mandated by federal labor law. Therefore, Respondents’ enforcement of TL Section 1613-b and SSL Section 131-r are violative of federal labor laws.”
*605 The fifth cause of action in the petition alleges, in pertinent part:
“51. The New York State Department of Labor has actively and vigorously enforced laws that mandate a set minimum wage for employed labor. The state minimum wage law is codified in New York State Labor Law Section 652. Respondents’ retroactive taking of wages Petitioner earned results in Petitioner having worked for wages below the minimum wage set by state labor laws. Therefore, Respondents’ enforcement of TL Section 1613-b and SSL Section 131-r are violative of state labor laws.”
Discussion
Respondent, the State of New York, moves to dismiss all claims against it pursuant to CPLR 3211 (a) (2). CPLR 3211 (a) (2) states, in pertinent part:
“(a) Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . .
“2. the court has not jurisdiction of the subject matter of the cause of action.”
The Court of Claims has exclusive jurisdiction over claims against the State of New York (Glassman v Glassman, 309 NY 436 [1956]). Accordingly, the petition must be dismissed as against the State of New York.
Respondents, the State of New York Department of Taxation and Finance, Robert L. Megna, as Commissioner of the New York State Department of Taxation and Finance, the New York State Division of the Lottery, and Gordon Medencia, as Director of the New York State Division of the Lottery, move to dismiss the petition against them.
Tax Law § 1613-b (7) states, in pertinent part:
“From the time the division of the lottery is notified by the office of temporary and disability assistance of an individual’s liability for public assistance benefits under the agreement provided for in this section, the division of the lottery shall be relieved from all liability to such individual, their assigns, successors, heirs or representatives for the amount of any lottery prize winning of six hundred dollars or more certified to the comptroller to be credited against public assistance benefits and such individ *606 ual shall have no right to commence a court action or proceeding or to any other legal recourse against the division of the lottery to recover such lottery winnings . . . Provided, however, nothing herein shall be construed to prohibit such individual from proceeding against the office of temporary and disability assistance to recover that part of such lottery winnings . . . which is greater than the amount of public assistance benefits paid to such individual within ten years.”
Thus, the Division of the Lottery and its Director are immune from suit. Furthermore, the Division of the Lottery is an agency within the Department of Taxation and Finance. The petition does not allege any acts by the Department of Taxation and Finance that are independent of the Division of the Lottery. Accordingly, to the extent that the petition states a cause of action against the Department of Taxation and Finance and its Commissioner, they are also entitled to immunity pursuant to Tax Law § 1613-b (7). The petition must, therefore, be dismissed against these respondents.
Respondents OTDA and its Commissioner, David A. Hansell, move, pursuant to CPLR 3211 (a) (7), to dismiss the petition on the grounds that it fails to state a cause of action.
CPLR 3211 (a) (7) states, in pertinent part:
“(a) Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . .
“7. the pleading fails to state a cause of action.”
The court, when deciding a motion to dismiss the petition pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, must determine whether the petitioner has a legally cognizable cause of action and not whether the action has been properly pleaded. (Leon v Martinez, 84 NY2d 83 [1994]; Well v Yeshiva Rambam, 300 AD2d 580 [2d Dept 2002].) The petition must be liberally construed, the facts alleged therein must be presumed to be true and the petitioner must be given the benefit of every favorable inference (Leon v Martinez, supra; Sitar v Sitar, 50 AD3d 667, 669 [2d Dept 2008]; Riback v Margulis, 43 AD3d 1023 [2d Dept 2007]).
The first cause of action alleges that the interception of petitioner’s winnings constituted a taking of private property without due process of law in violation of the Fifth Amendment of the United States Constitution and article I (§ 7) of the New *607 York State Constitution. The process in this case provided for notice and an opportunity to be heard. Thus the petitioner was afforded appropriate process (Matter of Prue v Hunt, 78 NY2d 364 [1991]) and, therefore, this cause of action is dismissed.
The second cause of action alleges violations of the Equal Protection Clauses of the Federal and State Constitutions. Petitioner’s first equal protection claim is that he is being treated differently than lottery winners who did not participate in WEE Petitioner also argues that the recoupment of his public assistance monies discriminates by denying him the benefits of the minimum wage laws. This is a specious argument without any merit to it.
“In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some ‘reasonable basis,’ it does not offend the Constitution simply because the classification ‘is not made with mathematical nicety or because in practice it results in some inequality’ ” (Goodwin v Perales, 88 NY2d 383, 398 [1996], quoting Dandridge v Williams, 397 US 471, 485 [1970]).
In this case the State has a rational basis in that it is seeking to recover monies paid out as public assistance. Accordingly, petitioner fails to state an equal protection claim and, therefore, this cause of action is dismissed.
The third cause of action alleges that petitioner was denied his substantive due process rights guaranteed by the 14th Amendment to the United States Constitution and article I (§ 6) of the New York State Constitution. Contrary to the petitioner’s argument, the State’s recoupment of public assistance benefits does not violate a fundamental right.
A law that impinges upon a fundamental right is subject to strict scrutiny; a statute that does not is valid if it bears a rational relationship to a governmental interest (Samuels v New York State Dept. of Health, 29 AD3d 9, 13 [3d Dept 2006]). In this case the statute bears a rational relationship to a governmental interest and, therefore, this cause of action is dismissed.
The fourth and fifth causes of action allege violations of the federal (29 USC § 206) and state (Labor Law § 652) minimum hourly wage laws.
The federal “minimum wage” law (29 USC § 206) states, in pertinent part:
*608 “§ 206. Minimum wage
“(a) . . . Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates.”
Labor Law § 651 states, in pertinent part:
“Definitions
“As used in this article: . . .
“5. ‘Employee’ includes any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work: . . . (n) by a federal, state or municipal government.”
Labor Law § 652 states, in pertinent part:
“Minimum Wage
“1. Statutory. Every employer shall pay to each of its employees for each hour worked a wage of not less than.”
There are three reasons why the federal and New York State minimum hourly wage laws alleged violation causes of actions are not cognizable. Since the essential facts are undisputed there is no triable issue of fact yet to be determined.
First: When petitioner purchased a New York State lottery ticket it was subject to all of the rules, regulations and statutes with respect to that lottery ticket. The statutory requirement of recoupment of previous public assistance monies petitioner had received was implicitly agreed to by petitioner when he purchased the New York State lottery ticket.
Second: Social Services Law § 131-a required that the public assistance monies petitioner had received be determined by his household size, rent and other eligibility factors and not by how many hours per week he participated in the “Work Experience Program.” Social Services Law § 131-r required that public assistance recipients engage in “work activities” in return for their benefits. Clearly, petitioner was not receiving “wages” and was not an employee of anyone (Brukhman v Giuliani, 94 NY2d 387 [2000]). There was no employer-employee relationship. The public assistance monies petitioner received had no indicia of “wages” as no income tax W-2 statement was furnished to petitioner or deductions made for FICA or Medicare taxes.
Third: The federal minimum wage law does not apply to petitioner as he was not an employee “engaged in commerce” *609 when he received the public assistance benefits, therefore, he was not a federally protected worker. Furthermore, “federal, state or municipal government” employees are specifically excluded from New York State’s minimum wage requirement (Matter of Faculty Student Assn. of State Univ. of Oneonta v Ross, 54 NY2d 460 [1981]). Therefore, petitioner cannot invoke New York’s minimum wage protection standard for the public assistance benefits he had received from New York City.
Thus, the federal and state statutory minimum wage standards do not extend to public assistance recipients such as petitioner. Based on the foregoing, the fourth and fifth causes of action are dismissed.
The sixth cause of action is an allegation of “Consumer Fraud” by respondents, the State of New York, the New York State Department of Taxation and Finance, Robert L. Megna, as Commissioner of the New York State Department of Taxation and Finance, the New York State Division of the Lottery and Gordon Medencia, as Director of the New York State Division of the Lottery.
This petition has been previously dismissed against the aforesaid respondents and there is no need to reiterate the reasons thereof. Accordingly, this cause of action is dismissed.
The seventh cause of action is an allegation of “Deceptive Business Practices” by respondents, the State of New York, the New York State Department of Taxation and Finance, Robert L. Megna, as Commissioner of the New York State Department of Taxation and Finance, the New York State Division of the Lottery and Gordon Medencia, as Director of the New York State Division of the Lottery.
This petition has been previously dismissed against the aforesaid respondents and there is no need to reiterate the reasons thereof. Accordingly, this cause of action is dismissed.
The eighth cause of action in the petition alleges, in pertinent part: “83. The Notice of Lottery prize Intercept violates TL Section 1613-b (6) and prejudiced Petitioner.”
Tax Law § 1613-b (6) states, in pertinent part:
“The department of social services shall notify the prize winner in writing, of the amount of such prize winning to be credited against public assistance benefits and the procedure and time frame by which the prize winner may contest such crediting. Such *610 procedure shall include the address and telephone number of the department of social services and who the prize winner may contact with respect to correction of any error in such crediting concerning such individual’s liability for public assistance benefits or with respect to payment of such liability.”
Respondents concede that Tax Law § 1613-b (6) was violated because the Notice of Lottery Prize Intercept did not contain the name, address and telephone number of whom the prize winner may contact. The notice does, however, advise the prize winner of how to contest a claim and it is undisputed that petitioner was, in fact, able to contest the claim. Moreover, by letter dated December 21, 2007, OTDA informed the petitioner that it was correcting the error. Accordingly, this cause of action is dismissed as moot.
In sum, respondents’ cross motion is granted and the petition is dismissed.